Stanard, J.
If, on the general demurrer to the de■claration the court could intend that the President and Directors of the Office of Discount and Deposit of the Bank of Virginia at Charleston, might be a private corporation, or an association of individuals, trading under that designation and personally chargeable on their contracts, as was hinted at rather than seriously contended for in the argument, then the demurrer ought to have been overruled, and the case permitted to progress to judgment against such private corporation or individuals; and the judgment would charge •that corporation or those individuals, and not the corporation of the Bank of Virginia, But that such intendment cannot be made, is, I think, free from all doubt. It is judicially known to the court that the *390 corporation of the President, Directors and Company of the Bank of Virginia exists, and that the designation of one class of its functionaries is “the President and Directors of the Office of Discount and Deposit at Charleston.” The functionaries so designated are . ° . not a corporation, and have not, under that designation, corporate capacity to contract, or effects to charge;, and any contract made by them is effectual only as a contract or corporation of the President, Directors and company of the Bank of Virginia. They are nonentities to the end of creating any other corporate responsibility, and their contracts are nugatory and abortive for any other purpose, unless they are so framed as to create a personal responsibility of those who-are president and directors of the office. Without enquiring whether or no the president and directors may so contract as to subject them to personal responsibility, and consequently to suit on that responsibility, it is, I think, perfectly clear, that in this case the suit is not on such responsibility, and that no judgment could be taken which would charge them personally. That it could, was not seriously insisted on. in the argument. It is obvious, that the claim of the plaintiff is not on an individual or personal, but an. alleged corporate responsibility, and no judgment could be properly rendered in this case that would, personally charge, or the execution on which could be levied on the effects of the individuals who, at the-time of suit or judgment, or thereafter, might be the-president and directors of the office. It-has already been shewn, that no suit against them, as constituting in themselves a corporation distinct from the Bank of Virginia, can be maintained, because they have no such corporate character, no capacity to contract, no effects to charge. All this has been in effect conceded in the sequel of the argument of the counsel for the plaintiff in error, and he endeavours to maintain that; *391 this is a suit on a responsibility of tbe corporation of tbe Bank of Virginia, tbe judgment in which would only charge, and tbe execution on that judgment be levied only on tbe effects ot that corporation; and that tbe suit, in the manner in which it has been brought and conducted, is warranted by tbe act passed tbe 19th day of March, 1832, Suppl. to Rev. Code, p. 381.* In other words, tbe proposition in effect is, that tbe act authorizes a suit in which tbe process, declaration and judgment are in terms to be against tbe office or branch, or tbe president and directors of tbe office or branch, but tbe cause of action must be a responsibility of tbe corporation, (tbe President, Directors and Company of tbe Bank of Virginia,) and the judgment and execution must charge or be levied on tbe effects of that corporation only. If this be so, then tbe act authorizes a suit against tbe bank, by tbe description of the branch bank, or tbe president and directors of tbe branch bank. Without questioning tbe power of the *392 legislature to authorize a suit ou the contract, and' charging the effects, of the corporation, by process and pleadings giving any name to the defendant that whim or caprice may dictate, as a substitute or equiva^en^ ^or ^he corporate name, and supposing that power to be exercised by the act in question, still the declaration in this case is radically defective, and the demurrer to it was properly sustained. Whatever name is assigned to the defendants, whether branch bank, or president and directors of the office of discount and deposit, the case to be made by the pleadings, (that being the only warrant for the suit,) is a consummate right of suit against the Bank of Virginia, arising out of transactions between the plaintiff and the branch named in the process and pleadings. The suit is not authorized on all transactions with the branch, or the president and directors thereof, but .only on such from which a controversy exists with, and on which a suit is maintainable against, the corporation. It is, therefore, not sufficient to allege a transaction with or contract of the branch, or the president and directors thereof, (for in truth every such contract, unless it bé that of the corporation, made by the agency of the branch, or of the president and directors thereof, is nugatory and abortive of any responsibility of the corporation,) but the responsibility or contract must be alleged as that of the corporation, otherwise the case that would sustain a suit against the corporation is not made, and consequently it cannot appear to be warranted by the act. Neither of the counts in the declaration shews necessarily any engagement, contract or responsibility of the corporation. The second count is as defective in this respect as the first; for though it alleges the advance of money to the corporation, there is no averment that a controversy with the corporation respecting it had arisen, and no assumpsit by the corporation is charged, *393 -so as to shew that the plaintiff could sustain a suit therefor against it.
"Were I to confine my opinion to the particular •claration in this case, the general question respecting the construction of the act of 1832, in regard to the manner of conducting suits under its provisions, would remain unsolved. As that question has been argued, and is one of general importance, and as I have formed a distinct opinion on it, I deem it proper to-express it.
I have already noticed the construction contended for by the plaintiff in error, which results in giving, in substance and effect, a suit against the corporation, hut to be conducted against it by the name of the branch bank, or the president and directors of the •office of discount and deposit. To say the least of it, this would be a whimsical change, without any apparent reason, liable to inconvenience, and recommended by no conceivable advantage; and the intention to make it should not he imputed to the legislature, unless that intention be evinced by language free from all ambiguity.
This construction cannot he made without changing the punctuation; and if that he done, still the letter ■of the act would require the suit, pleadings and judgment to he against the branch bank, co nomine, and not otherwise. Confessedly the act cannot operate according to its letter, and justify the suit and pleadings in this case. Under such circumstances, its sound •construction is to be sought in the admitted object of the act, and the forms to be observed should be moulded ■to harmonize with that object. The object of the act was to enable parties haying controversies with the corporation to institute suit on such controversies at the place where the transaction occurred out of which they arose, and to facilitate the introduction of the case into court by an easy service of process. The *394 act had in view the prosecution of no claim but oneagajng£ corporation, the judgment and execution for which should charge the effects of the corporation only. As the suit was to be for a claim on the corpora^on’ ^ie pleadings must of necessity manifest that claim, and the judgment be rendered in conformity with it. All these objects were attainable by serving process as the act directed, and, on such process, dedaring upon the contract or responsibility of the bank-The summons, in strictness, should be to answer a claim of the plaintiff on the corporation; since, for such claim oiily, could the suit be brought. In-opposition to the construction which requires the pleadings and judgment to conform to the claim, (that is,, a deelaration-against the President, Directors and Company of the Bank of Virginia, on the contract or responsibility of the corporation, and a judgment against the president, directors and company,) it is objected that the act, by a change of punctuation, authorizes-the suit against the branch bank. If a change must be made to sustain a construction which imputes the-purpose of making so whimsical and unnecessary an alteration in the name of one of the real parties, involving difficulties and inconvenience in the pleadings and judgment, and the language may be interpreted in reference to the end, and in conservation of all the purposes of the act, avoiding all difficulties and incongruities in the pleading and judgment, the latter rather than the former interpretation should be adopted. Indeed the urgency of the case may be such that the latter interpretation would be given, though, to-make the act- distinct as interpreted, words -should be-changed, rejected or supplied. Could the-interpretation be given in no other way than by understanding the words “controversy against any such branch bank,” as equivalent to “ controversy with any such branch bank,” that would be justified by sound prin *395 ciples of construction. But that is not necessary in this case. The object of the act was to authorize a suit for a claim on the corporation, having a particular origin, to be instituted at the place where it originated. To institute a suit, is to sue out processinit; then,if the latter words be substituted for the former, theactwill authorize the party to sue out process in a particular jurisdiction, in a suit which can be maintained against the corporation; and as the act authorizes the process to be served on the officers of the branch bank, there is very little straining of language to characterize the process as one against the branch bank, which the law authorizes to be served on the officers thereof. At all events, the suit in which the process is issued, must he one that can be maintained against the corporation, the judgment in it is to chai’ge, and the execution on the judgment is to be levied on, the effects of the corporation; and it is proper that the declaration should be against the corporation by its corporate name. This being so, the declaration in this case is fatally defective.
Having reached the conclusion that the declaration is not against the corporation, and the corporation is not thereby made a party, and the further conclusion that it charges a corporate responsibility of the president and directors of the office, and that we cannot intend that there is or may be a private corporation by that name, but have judicial cognizance of the fact that the designation in the declaration is of a mere agency of a public corporation, having no corporate character per se, to contract, sue, or be sued; that is, that there is no corporate character of the defendants in respect to which the plaintiff can have judgment; I think that we must make the like negation of corporate character throughout, and as in that character we cannot render judgment against them, we cannot render judgment in that character in their favour, and *396 therefore judgment cannot be given for them for costs on the affirmance of the judgment.
Cabell and. Brooke, J., concurred in the opinion that the judgment should be affirmed, without costs.
Tucker, P.
This is an action arising out of a transaction between the plaintiff in error and the Branch Bank of Virginia at Charleston, in Kanawha county, brought under the provisions of the act of March 19, 1832, entitled “an act authorizing suits against the branches of hanks in this commonwealth in certain cases.” The process is not in the record, not having been made a part thereof by oyer: but the declaration commences with shewing that the president and directors of the said branch -hank" were summoned to answer the plaintiff' of a plea of trespass on the case; and it proceeds accordingly throughout to complain of them,, to set forth their indebtedness for money lent to or laid out for them, or lent to or laid out for the President, Directors and Company of the Bank of Virginia, at the request of the defendants, in consideration whereof the said defendants promised to pay, &c.; and lays the breach that they did not pay.
This action presents a pei’fect anomaly. It is brought against the agents of the Bank of Virginia, (for such the president and directors of the branch bank are,) instead of against the bank itself: it is brought against ’ a hoard, constituting the president and directors of thé branch, who are not sued in their individual character, and yet are not a corporation capable of being sued. It demands a judgment which is to be rendered against this body of president and directors, and yet is to he enforced by execution against the property of the corporation (known to the law) of the President, Directors and Company of the Bank of Virginia; and thus, while it proceeds against a quasi corporation, *397 ■which is no corporation, and asks for judgment against it on its own alleged indebtedness, it looks to the enforcement of that judgment against the property the Virginia bank, by an execution which, if it correspond with the judgment, never can command the officer to levy on one particle of its property.
All these embarrassments arise from a want of perspicuity in the act, and from construing it rather according to its letter than its spirit. Can it be conceived to have been the legislative design to change, without a motive, the charter of the bank, and to repeal the provision which gave it its name of “ the President, Directors and Company of the Bank of Virginia,” and directed by that name it should sue and be sued ? Can it have been designed to authorize a suit against a quasi corporation, having no legal name by' which to be sued, and having in fact no legal existence as a corporate body; and this, too, without prescribing by what name they should be sued ? Can it have been designed to break down, without a motive, that symmetry in legal proceedings which requires that the execution shall be supported by the judgment, the judgment by the pleadings, and the pleadings by the demand? Can the legislature have designed, either that on a judgment against the branch bank, in which the mother bank would not be named, an execution should issue against the mother bank, or that the offieer of the law, with an execution not directed against the property of the mother bank, should, without the command of the process, proceed to levy upon it? I cannot think so. The design of the act was merely to authorize suits against the bank, on transactions with a branch bank, in that county in which the branch was situated, and to make the service upon its officers equivalent to service on the officers of the mother bank at Richmond. The act must be construed in conformity with this intention. In doing so, we must *398 not on the one hand disregard the chartered principle that the hank must be sued by its corporate name, nor imagine on the other that a board of agency shall be sued by no name at all recognized by the law. Construe the act by its letter, and it provides, it is true, that the branch bank may be sued. But how sued? By what name sued? It cannot be sued as a corporation, for it is none. It cannot be sued by the name of the president and directors of the branch bank, for it has no legal name. But the branch bank may be sued by issuing process in the county where it is established, and serving it as the law directs, on its president or cashier. This is what is meant by suing the branch bank. It consists in instituting the proceeding in that county where the branch is established, and giving notice to its officers to appear and defend the suit. But with this it is perfectly compatible that the process, the declaration, and the subsequent proceedings, should be against “the President, Directors and Company of the Bank of Virginia.” Ho action could be maintained otherwise. Por there can be no cause of action against the branch bank, as such. Being but an agent, being no corporation, its liability is the liability of the mother bank. The act itself contemplates no liability of the branch, as such. Its language is, “ any person, &c., having any controversy with any of the banks, which shall have arisen out of any transactions between such person, &c., and any one of the branches.” The controversy, then, is with the bank itself, though the transaction was with the branch. The bank, and the bank alone, as the corporation, is liable; the demand must be against it; the contract must be laid with it, for such it truly is; the implied promise must be laid as made by it, and the breach must correspond. Then will follow in symmetrical order the pleadings, the verdict, and the judgment; upon which last, such an execution as the statute con *399 templates will issue against the goods and chattels of the hank, wherever found. Thus every thing 'is harmonious and consistent with legal principles, while the present action is in irreconcilable conflict with them all.
I am of opinion to affirm the judgment, without 'Costs.
Judgment arrirmed, without costs.

 This statute (Acts 1831-2, eh. 75, p. 68,) enacts, “that hereafter any person or persons, body or bodies politic or corporate, having any controversy with any of the hanks within this commonwealth, established by the laws thereof, which has or shall have arisen out of any transactions between such person or persons, body or bodies politic or corporate, and any one of the branches of either of the said banks, it shall be lawful for any such person or persons, body or bodies politic or corporate, desiring so to do, to institute any suit at law or in chancery, which by law could now be maintained against the said mother bank on any such controversy against any such branch bank, in any court of record in the county or corporation where the office of discount and deposit of such branch bank is established; and in all such cases it shall be sufficient to execute a summons, instituting such suit, on the president, or in his absence, the cashier, of such branch bank. And any execution which may issue upon any judgment so recovered, shall be levied in the county or corporation where the judgment is obtained; and if there be no property, or if the property taken in execution be not sufficient to satisfy the same, then the execution shall be levied, for the amount due thereon, on any property of the bank, in any part of the commonwealth.”